**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **KEITH QUAGLIARELLO,** | : | **CIVIL ACTION NO. 1:10-CV-1850** |
| **Petitioner,** | : | |
| | : | **(Judge Rambo)** |
| **v.** | : | |
| | : | **(Magistrate Judge Blewitt)** |
| **WILLIAM SCISM, WARDEN,** | : | |
| **Respondent.** | : | |

## REPORT AND RECOMMENDATION

### I. Background.

On November 2, 2010, the Petitioner, Keith Quagliarello filed, *pro se*, a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1). The Petitioner was granted leave to file *in forma pauperis*. (Doc. 5). He named as Respondent William Scism, the Warden of the Low Security Correctional Institution at Allenwood, Pennsylvania ("LSCI Allenwood"). (Doc. 1).

The Court issued an Order to Show Cause on September 7, 2010 and directed the Respondent to answer to the Petition. (Doc. 5). On September 27, 2010, the Respondent filed a Response to the Petition with attached exhibits. (Doc. 8).

By way of background, the Petitioner was convicted of Wire Fraud in the United States District Court for the Southern District of New York. (Doc. 8, Ex. 1, Attach. A). He was sentenced to 36 months imprisonment on October 1, 2008. *Id.* The Petitioner participated in a Residential Drug Program, rendering him eligible for a one-year reduction in his sentence if he successfully completed the program. *Id.* On October 14, 2009, the

Petitioner was released to a Community Corrections Center ("CCC") in Brooklyn, New York. *Id*.

On December 9, 2009, a urine sample was taken from the Petitioner. (Doc. 8, Attach. C at 1). On December 14, 2009, the staff became aware that the Petitioner tested positive for narcotics, and he received an incident report for violating the Code of Conduct. *Id*. The Petitioner was removed from the CCC and placed at the Metropolitan Detention Center in Brooklyn. *Id*. He received a copy of the incident report on December 16, 2009. *Id*.

On December 28, 2009, a Center Discipline Committee ("CDC") hearing was held and the Petitioner was sanctioned to 20 days loss of good conduct time, forfeiture of 27 days of non-vested good conduct time, and one year loss of visitation privileges. (Doc. 8, Attach. C at 6). It was also recommended that he be returned to a secure facility. *Id*. This hearing was certified by the Discipline Hearing Officer ("DHO") on January 4, 2010. *Id*.

The Petitioner was transferred to LSCI Allenwood on January 21, 2010. As a result of the incident, the Petitioner lost the opportunity to have his sentence credited and his original sentence was reinstated. Thus, his projected release date is now May 1, 2011. (Doc. 8, Ex. 1 at ¶ 2; Attach. A).

For the reasons set forth below, it is recommended that the petition for habeas relief be dismissed, or in the alternative, that relief be denied.

**II. Claims of Habeas Petition.**

In the instant petition for habeas relief, the Petitioner argues that his CDC hearing was not conducted properly, in violation of his right of due process. (Doc. 1 at 6). He challenges the BOP's authority to discipline him pursuant to its Program Statements. (Docs. 1 and 10).

The Respondent argues that the Habeas Petition should be dismissed because the Petitioner has not exhausted his administrative remedies. The Respondent also claims that even if the Petitioner had exhausted his administrative remedies, the Petition should be denied because he was afforded all the necessary protections that due process requires. (Doc. 8 at 3).

**III. Discussion.**

*A. The petition for habeas relief should be dismissed because the Petitioner failed to exhaust his administrative remedies.*

The Petitioner is required to exhaust his administrative remedies before filing his writ of habeas corpus pursuant to 28 U.S.C. § 2241. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996); *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981) *(per curiam)*. We find that the Petitioner here is required to exhaust his administrative remedies, which he has admittedly failed to do. *See Malvestuto v. Martinez*, 2009 WL 2876883 (M.D. Pa.). The Court in *Malvestuto* stated:

> Although Section 2241 does not contain a statutory exhaustion requirement, courts in the United States Court of Appeals for the Third Circuit have consistently required an inmate to exhaust his administrative remedies prior to petitioning for a writ of

habeas corpus. *Moscato v. Fed. Bureau of Prisons*, 98 F.3d 757, 760 (3d Cir. 1996) (citing *Bradshaw v. Carlson*, 682 F.2d 1050, 1052 (3d Cir. 1981) *(per curiam)*); e.g., *Callwood v. Enos*, 230 F.3d 627, 634 (3d Cir. 2000). Exhaustion is required for the following reasons: "(1) allowing appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." *Moscato*, 98 F.3d at 761-62 (3d Cir. 1996) (citations omitted).

*Malvestuto*, 2009 WL 2876883 at *2; *McCooey v. Martinez*, 2010 WL 411744, * 2 (M.D. Pa.).

The *Malvestuto* Court then outlined the procedure utilized by federal inmates which was established by the BOP and set forth at 28 C.F.R. §§ 542.10-542.19, stating:

> Pursuant to this protocol, an inmate first must present his complaint to staff, and staff must attempt to resolve informally any issue before an inmate files a request for administrative relief. See § 542.13(a). If informal resolution proves unsuccessful, the inmate may raise the complaint with the warden of the institution where he or she is confined. *Id*. An inmate has twenty calendar days from the date of the alleged injury within which to complete this informal resolution process, he or she may appeal the decision to the Regional Office and the General Counsel of the BOP. See § 542.14(a). If an inmate is dissatisfied with the response received during the informal resolution process, he or she may appeal the decision to the Regional Office and General Counsel of the BOP. See §542.15 A BOP decision is not final -and thus not reviewable-until relief has been denied by the General Counsel's Office.

*Id*.

In this case, the Respondent offers a declaration from Michael S. Romano, Attorney Advisor at the United States Penitentiary in Lewisburg, Pennsylvania. (Doc. 8, Ex. 1). Romano stated that a review of the record reveals that the Petitioner filed four administrative remedies. (Doc. 8, Ex. 1 at ¶5). He filed an appeal at the Regional level, but this remedy was received on May 3, 2010, five months after the Petitioner's CDC hearing/sanctions on

-4-

December 28, 2009. *Id*. The remedy was rejected for multiple issues, including untimeliness. *Id*. The Petitioner was afforded the opportunity to provide staff verification of a valid reason for the delay, but he failed to do so. *Id*.

Exhaustion is excused where pursuit of administrative remedies would be futile, the agency's actions clearly and unambiguously violate statutory or constitutional rights, or the administrative procedures would be inadequate to prevent irreparable harm. *Lyons v. U.S. Marshals*, 840 F.2d 202, 205 (3d Cir. 1998). *See also Rose v. Lundy*, 455 U.S. 509, 516 n.7 (1982) (exhaustion of state remedies not required where futile). There is no indication that any exigency exists in this case. Accordingly, we will recommend that his Habeas Petition be dismissed because the Petitioner failed to exhaust his administrative remedies. *See Malvestuto* at *4; *McCooey v. Martinez*, 2010 WL 411744, *4.

> *B. Even if the Petitioner had exhausted his administrative remedies, the petition for habeas relief should still be denied.*

In *Wolff v. McDonnell*, 418 U.S. 539, 563-67 (1974), the Supreme Court identified the minimum procedural due process rights to be afforded a prisoner accused of misconduct which may result in loss of good conduct time, which rights are applicable in the instant case. The prisoner has (1) the right to appear before an impartial decision making body; (2) twenty-four hour advance written notice of the disciplinary charges; (3) an opportunity to call witnesses and present documentary evidence in his defense when it is consistent with institutional safety and correctional goals; (4) assistance from an inmate representative if the charged inmate is illiterate or complex issues are involved; and (5) a written decision by the

fact finder of the evidence relied upon and the rationale behind the disciplinary action.

*Wolff*, 418 U.S. at 563-67; *McRae v. Holt*, Civil No. 08-0346, M.D. Pa.; *Redding v. Holt*,

2007 WL 2155543, *6 (M.D. Pa.).

> In *Redding*, the Court stated:

> The Bureau of Prisons ("BOP") has specific procedures for inmate discipline
> pursuant to 28 C.F.R. § 541.10, et seq. The regulations, in relevant part,
> provide:

>> [I]f the DHO finds that the inmate has committed a prohibited act(s)
>> other than the act(s) charged, then the DHO shall record those findings
>> clearly and shall change the Incident Report to show only the incident
>> and Code references to charges which were proved.
>> § 541.17(f).

> In *Wolff v. McDonnell*, 418 U.S. 539, 563-67, 94 S.Ct. 2963, 41 L.Ed.2d 935
> (1974), the United States Supreme Court described the constitutional due
> process requirements for prison disciplinary proceedings implicating the
> infringement of a cognizable liberty interest, such as the loss of good time
> credits. In relevant part, *Wolff* requires an inmate to receive at least twenty-
> four (24) hours notice of the alleged violations in writing. *Id*. at 564. The Court
> observed, "[T]he function of notice is to give the charged party a chance to
> marshal the facts in his defense and to clarify what the charges are, in fact."
> *Wolff*, 418 U.S. at 563-67. Additionally, the fact finder must state in writing
> the evidence relied upon and the reasons for the disciplinary action. *Id*.

In addition to the due process requirements set forth in *Wolff* with respect to cases

involving loss of good conduct time, the Court in *Williams v. Hislop*, 2007 WL 4111427, *4

(M.D.Pa. 2007), outlined the Bureau of Prisons' inmate disciplinary procedures:

> The Bureau of Prisons' inmate disciplinary procedures are codified at 28C.F.R.
> § 541, et. seq., and entitled, Inmate Discipline and Special Housing Units.
> These procedures are intended to meet or exceed the due process
> requirements prescribed by the Supreme Court. *See Von Kahl v. Brennan*,
> 855 F.Supp. 1413, 1418 (M.D.Pa.1994). Pursuant to these regulations, staff

shall prepare an Incident Report when there is reasonable belief that a violation of BOP regulations has been committed by an inmate and the staff considers informal resolution of the incident inappropriate or unsuccessful. 28 C.F.R. § 541.14. The incident is then referred to the UDC for an initial hearing pursuant to § 541.15. The UDC hearing is "ordinarily held within three work days from the time staff became aware of the inmate's involvement in the incident" and does not include the initial day staff learns of the incident, weekends, or holidays. See 28 C.F.R. § 541.15(b). ... If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest severity category, the UDC must refer the matter to a disciplinary hearing officer for a hearing. 28 C.F.R. § 541.15. "The DHO shall give the inmate a written copy of the decisions and disposition, ordinarily within 10 days of the DHO's decision."

28 C.F.R. § 541.17(g).

In the present case, it is clear that the Petitioner was afforded all the rights set forth in *Wolff* and in the BOP's regulations. Here, the Petitioner received written notice of the charges against him more than 24 hours prior to his CDC hearing. He received a copy of the incident report on December 16, 2009 and his hearing was held on December 28, 2009. (Doc. 8, Attach. C). He had ample opportunity to prepare his defense. He had the opportunity to call witnesses and present documentary evidence, but failed to do so. He did not request assistance from a staff representative to assist him during his hearing. Moreover, he was given the opportunity to make a statement and he admitted the charge.

The CDC documented the evidence relied upon in reaching his decision to sanction the Petitioner. (Doc. 8, Attach. C at 5). This evidence included, but is not limited to: the community based Program Statement; a copy of the intake process orientation checklist; a copy of a page of the resident handbook; and a copy of the chain of custody for the urine

testing results. *Id.* Moreover, as mentioned, the Petitioner admitted to the charge. *Id.* at 4. Thus, there is no evidence of a due process violation.

Rather, the Petitioner is challenging the authority of the BOP to discipline him for a violation under its Program Statements, alleging that his right of due process has been violated. Specifically, he challenges Program Statement 7300.09, which deals with Community Corrections Centers and also outlines the process of inmate discipline.[1] Program Statement 7300.09 at 5.7 refers to prohibited acts and identifies code 112 as follows: Use of any narcotics, marijuana drugs or related paraphernalia not prescribed for the individual by the medical staff. The Petitioner argues that this section is no longer in affect. However, his claim is without merit. Moreover, the disciplinary process was sufficient and there is no evidence that the Petitioner's right of due process was violated.

## IV. Recommendation.

Based upon the foregoing, it is respectfully recommended that Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) be dismissed for failure to exhaust his administrative remedies, or in the alternative, be denied on the merits.

**s/ Thomas M. Blewitt**
**THOMAS M. BLEWITT**
**United States Magistrate Judge**

**Dated: November 18, 2010**

---

[1]This Court conducted a review of the BOP Program Statements, which can be found on their website at http://www.bop.gov/DataSource/execute/dsPolicyLoc.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KEITH QUAGLIARELLO, | : | CIVIL ACTION NO. 1:10-CV-1850 |
| Petitioner, | : | |
| | : | (Judge Rambo) |
| v. | : | |
| | : | (Magistrate Judge Blewitt) |
| WILLIAM SCISM, WARDEN, | : | |
| Respondent. | : | |

**NOTICE**

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing

Report and Recommendation dated November 18, 2010.

Any party may obtain a review of the Report and Recommendation pursuant to

Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in
> 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the
> disposition of a prisoner case or a habeas corpus petition within fourteen
> (14) days after being served with a copy thereof.  Such party shall file
> with the clerk of court, and serve on the magistrate judge and all
> parties, written objections which shall specifically identify the
> portions of the proposed findings, recommendations or report to which
> objection is made and the basis for such objections.  The briefing
> requirements set forth in Local Rule 72.2 shall apply.  A judge shall
> make a de novo determination of those portions of the report or
> specified proposed findings or recommendations to which objection
> is made and may accept, reject, or modify, in whole or in part, the findings
> or recommendations made by the magistrate judge.  The judge, however,
> need conduct a new hearing only in his or her discretion or where

required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


**s/ Thomas M. Blewitt**
THOMAS M. BLEWITT
United States Magistrate Judge

**Dated: November 18, 2010**